All right, we'll call case number 22-50437, Valentine v. Broxton, and we'll begin with David Cassasa. Cassasa. Cassasa. Cassasa. Cassasa. Okay. Thank you, Your Honor. Good morning, and may it please the Court, David Cassasa for Appellant Garland-Valentine. Garland-Valentine has been held in administrative segregation, that is, in solitary confinement for the past 14 years. He spends 23 hours of each day in his cell under living conditions that are severely limited even by comparison to the ordinary constraints of prison life. Nearly a decade ago, when Wilkerson v. Goodwin, this Court held that extended solitary confinement in conditions less severe than those facing Valentine are sufficient to implicate a liberty interest under the 14th Amendment. Under Wilkerson and the Supreme Court's decisions in Wilkinson and Hewitt, and as the State does not dispute when prison conditions implicate a liberty interest, the prison must provide a meaningful review of the justifications for those conditions. It has not done so. The only review Valentine receives has a predetermined outcome. Texas' prison regulations require Valentine to complete the Gang Renouncement and Disassociation, or GRAD, program in order to be eligible for transfer, but the defendants refuse to allow him into GRAD until Valentine provides cooperatory testimony with outside law enforcement. Importantly, again, the State does not dispute that Valentine must choose between cooperative testimony or indefinite confinement, and it does not dispute that Valentine's refusal to provide that testimony was the sole basis for his rejection from GRAD, and thus his ongoing solitary confinement. Counsel, what is his right to the GRAD's program? Is there a State statute that creates and entitles a prisoner in the circumstances of this person to enter the GRAD's program and benefit from it, or is it something that the prison created, kind of like a defendant wanting to get a 5K letter for cooperating and agreeing to be debriefed? Which would it be more akin to? Well, importantly, Valentine's liberty interest here is not a claim that he's entitled to itself, it's a claim that he's entitled to a realistic possibility of movement out of administrative segregation. Now, the prison, through its own systems, this is not a State statute, this is the prison system, has set up a rule where GRAD is the only doorway out of solitary confinement for prisoners like Valentine. But the defendants have locked that door by saying, we're not going to let you into GRAD unless you cooperate with law enforcement. Valentine's not saying that the Constitution compels him to be allowed into GRAD. Not everybody gets the benefit of GRAD. Not everybody who is under the restrictive conditions that your client is gets the benefit of GRAD. As I understand it, doesn't the program require, like, an admissions process that includes an investigation, as well as a denunciation of gang status? Well, other prisoners who are in solitary confinement aren't required to go through the GRAD doorway. It's only people who are in solitary confinement because of a former gang designation who have to complete GRAD. There is an investigation process, and there's a list of written requirements. Cooperating with outside law enforcement is not one of those written requirements. Valentine completed all of those. He underwent the investigatory process. And when the end came, when they were deciding, when Sergeant Broxton was deciding whether he was in or out of GRAD, he got a rejection letter saying, you are rejected from GRAD. And she had to check in other on the box for reason for rejection. This is ROA 408. And other says, you refuse to cooperate with outside law enforcement. Now, if GRAD were just a benefit or something that was a matter of grace from the prison, the constitutional claim would be significantly different than it is, if it existed at all. But what has happened here is the prison has placed him in administrative segregation. And he's now been there for more than 14 years and for more than four years since this GRAD rejection, this interview with outside law enforcement took place. Under Wilkerson and under Wilkinson, the obligation, therefore, is on the prison to justify the atypical and significant hardship that Valentine is facing. So Valentine's not here asking for something that's a purely voluntary program. He doesn't have an entitlement to that. But he has an entitlement to a meaningful review that looks on the present conditions and his present situation and determines whether or not it's justified that he be placed in administrative segregation rather than in the general population or the ordinary constraints of prison life that his sentence automatically confers on him. Your argument is that requiring cooperation with law enforcement should not be part of this qualification process. Yes, that it conflicts with both the 14th Amendment right and with the Fifth and First Amendment rights independently. Well, I want to get to the Fifth Amendment. I have some questions about that in a minute. But, I mean, it seems pretty rudimentary that cooperation with law enforcement, even just to get, I mentioned the 5K, a break on sentencing or at least a suggestion to a judge that a lesser sentence might be more appropriate, I mean, that in and of itself requires cooperation with law enforcement. So, I don't understand the overly burdensome nature of that requirement on its face. So, but in answering that question you mentioned on the Fifth Amendment, I didn't see anything in the briefing that covered the types of questions he was asked. That could mean cooperation could mean anything from an organizational structure, information about other people in other parts of the country, other activities that he was aware of but didn't participate in, including hearsay. Those debriefings are, as you know, very extensive, involve tentacles of criminal activity that this person may know of firsthand or may have heard of that would be helpful to law enforcement, identifying other people. But none of that would be Fifth Amendment violative questioning. So, I don't know where in the record I can find what questions he was asked that would be incriminating other than this general notion that if I cooperate, eventually they're going to ask me about something that I did that they didn't know about. Can you help me out on that part? Yes. To start with your first question first about 5K and sentencing reduction, there's an important distinction here in that the conduct that Ballantyne is being asked about now is not the conduct that's his prison sentence, that's related to his conviction. And that's an important line that Justice O'Connor draws in her McEwen concurrence and that the Ninth Circuit found relevant in Antelope, that the investigation here is targeted at things that are unconnected to all of the due process protections that Mr. Ballantyne received leading up to his sentence. So, that makes this investigation, this penalty, appear more like a subterfuge for the conduct of a criminal investigation, which is what McEwen says is impermissible and is compulsion under the Fifth Amendment. Now, as to the incriminating nature of the testimony, the Fifth Amendment standard is very slight under Hoffman and Maness. The relevant question is, is it perfectly clear, perfectly clear to the person who's being asked questions that nothing that they say could lead to a potential criminal investigation? The question is, would it provide a link in the chain of evidence leading to a possible prosecution? Mr. Ballantyne was brought in front of a number of law enforcement agents from a variety of agencies, and this is at ROA 15 and 16, and also at, if I can pull, at ROA 49, and 50, his sworn testimony in his verified complaint, which is, by the way, sufficient summary judgment evidence, was that the officers asked him to lie about others, about their involvement in the gang, they threatened him with prosecution, they threatened him with a life sentence, like they had given another unnamed defendant who they referred to as slick. And I don't think it's unrealistic for a defendant who's being asked about affiliation with a criminal organization and is threatened with a life sentence to feel that the information being brought from him could be used against him in a prosecution. Now, the declaration in the complaint is not as detailed as it would have been had he been assisted by counsel. I'm sure he would have then been able to more adequately anticipate this type of question and lay out, these are the questions that I was asked and I invoked my Fifth Amendment rights in response to that. But despite this court appointing counsel for Mr. Ballentine in the first appeal, on remand, his requests for counsel were rejected and he was unable to have that assistance, which inhibited his ability to develop the record, to conduct discovery, and to present this kind of granularity of issue to the district court. Now, typically, because of that, pro se litigants are given a liberal construction to their pleadings, and here, the evidence in the record, particularly at ROA 49 and 50, I think is sufficient to make out a reasonable expectation that this could be a link in the chain of evidence leading to a potential prosecution. That satisfies. Is there any evidence that he is still with the gang? So, he says that he has completely renounced his association with the gang, and importantly, the state has not argued he is still a member of the gang. Is there any evidence that he is a potential danger if they took him out? Because I'm looking at other reasons to leave him in confinement, solitary confinement, and so I'm asking, is there any evidence that he would create a danger if he was put back in the general prison? No, the state has not made that argument. I'm not aware of any evidence that would support that. So, it's just the lack of grad? That's correct. And they're not going to let him have grad? That's correct. So, he's going to be in the solitary confinement until his sentence expires? Yes, the state has forced him to choose between indefinite solitary. It's really hard to get parole if you're in solitary confinement. That's exactly right, Your Honor. But you're just saying it's a swirl. That's right. And in fact, not only is it difficult to get parole, which does always involve some element of discretion, but being in administrative segregation puts a hard cap on his ability to earn good time credit, which is an important parole factor. So, he is stopped from progressing beyond the SAT 4 classification, state-approved trustee 4, which is his current status. That's not in the record, but that is his current status. But because he's in ADSEG, he can't move up to SAT 3 or SAT 2, which would mean more good time credits and more ability to progress toward parole. The absence of any showing or argument or evidence that he's an ongoing danger sets this case apart, for example, from STRS, where this court rejected a grad-related 1983 claim. In that case, the prisoner had stabbed a correctional officer, and the prison said, we're not going to let him into grad because he is an ongoing danger to prison safety. So, he has to remain in administrative segregation. That showing has not been made here. The argument hasn't been made here. The state conceded in their own brief at 45 and in the record below at ROA 216 that the only reason he was rejected from grad is because he refused to cooperate with outside law enforcement. And here, unlike in the sex offender cases, like McCune itself, for example, or Lacey, there's significant evidence in the record, in those cases, that the sex offender histories that are being asked for have a rehabilitative purpose, that it's important in order to achieve the program's goal of preventing recidivism. That evidence has not been introduced here. That argument has not been developed here. The state makes an unsupported assertion in its brief that his refusal to cooperate with law enforcement suggests that his renunciation of the gang may not be sincere, but there's nothing backing that up beyond the assertion made in the brief. And when Sergeant Broxton rejected him from grad, she didn't say, we believe you're still affiliated with the gang, and you also refuse to cooperate with law enforcement, or we think you're affiliated with the gang because you refuse to cooperate with law enforcement. She just said you refuse to cooperate with outside law enforcement, therefore you're rejected from grad. Well, isn't the whole point of grad also to go through all of this analysis that you just described? Are you still in it? Did you really renounce it? Are you a danger? That's the whole point of the process. And I believe that you included what it requires, the regulations, and cooperating with law enforcement is not one of those requirements in order to have due process. It's a two-step process. There's a pre-grad investigation where you have to show you satisfy all the prerequisites. My understanding is then that once you are admitted to grad, it's sort of like a correspondence curriculum, anger management courses, that type of thing, you know, conflict avoidance. He never progressed to that step because of his rejection from the program in the pre-grad investigation phase. And then with regard to the interview or the interrogation by the task force, is there any evidence that it served any type of penological purpose other than it being an investigation? The state has not provided any evidence to suggest that. In fact, the state has refused to identify the officers who were present in the investigation. One of the things that he requested was a document he was given during the interrogation, the identities of the people who were interrogating him, and that has not been made available to him. So beyond his sworn assertion that they're from ATF and a variety of other agencies, we don't know. So his ability to provide more detail was made difficult when he couldn't get with the people that were there in some way or fashion. And in his repeated discovery requests, he acknowledged, I believe this is at ROA 151, that there may be protected information in his security threat group file. That's the most important piece of discovery that he was not able to obtain, is the prison's file on why do you have an STG designation and what do we think your affiliation with the gang is. He recognized that some of that may be protected information. He said, I'm happy to take the document with redactions, with names taken out, with addresses taken out. And again, had he received appointed counsel from the court, it would have been possible for that document to be produced with an attorney-eyes-only designation, so that there was no threat to prison security. But both because of the denial of discovery and because of the denial of counsel, he was severely restricted in his ability to develop the record in that respect and to rebut any potential argument from the state that he was still a member of the gang. I reserve the rest of my time for rebuttal. Thank you, Your Honor. Your time for rebuttal. And we will now hear from your opponent. I'll let you pronounce your name. Thank you. Ari Kunin on behalf of the defendants. May it please the court. My friend on the other side really has not spoken to the actual standard that this court would have to consider in this claim for money damages and injunctive relief. I think the actual problem here is that we've heard no clearly established law supporting the arguments my friend on the other side made. And any injunction he seems to want the court to enter that would have to follow from ex parte young it's hard to imagine what a court could possibly do that would not violate sovereign immunity. Appointing counsel and having more discovery is not going to avoid those purely legal doctrines. What about an injunction that they cannot ban him from grad because of his failure to communicate with those outside officers? So there are a couple of points there, but I think the top level response is that under ex parte young itself, this is directly from page 158 of ex parte young, the type of injunction that seeks to control or direct the discretion of state officials in the exercise of their duties is squarely prohibited by sovereign immunity. What he would be saying is effectively the grad investigation, I think we heard a concession this morning, that we're talking about the first part here, not the actual grad, the coursework, things like that, because that only comes in the discretion of prison officials. The renouncement is tested over a year-long period and deemed to be a sincere, true disaffiliation. Until that has happened, that purely discretionary function that is within the expertise of prison officials, and I don't think that's disputed, there is no entry into grad that's going to be possible. But let's just assume, arguendo, that the one thing that is preventing him, the one shut door, is a violation of the Constitution. Why can there not be an injunction to not violate the United States Constitution with that door? So we'd have to know a couple things, I think, to answer the question with the specifics for Mr. Ballantyne. I'm just asking in general. So, for example, if the example were, you know, I'm being asked, and I think there's a case example of this, if I'm being asked to comply with a policy, cutting my hair, for example, but I can't do it because of religious reasons, right? That's the constitutional right they want to exercise. I think that maybe there's some fact questions about that. There's no constitutional right to be in a violent white supremacist prison gang. That is something he would, in fact, have to renounce to... Yeah, and he did. Well... The issue here is this communication with these officers. I take issue with that. And I think I have to take a step back here and correct some of the things that Mr. Casas has said. I don't want to impugn the appellant's briefing, but I just, I think it's very confused as to what the record actually shows. It is, of course, disputed whether Mr. Ballantyne has sincerely renounced his longtime confirmed membership in the Aryan Circle. But that wasn't the reason they gave. I mean, in other words, they didn't say, look, he walked in and said, oh, I'm not going to be in the gang. And it's clear he was lying. That's not what they said. They said it was this thing about not having this Q&A. Well, and so while I mean, we're very differential to all of this kind of thing, but at the end of the day, the state can't violate the United States Constitution. I'm not saying they did. I'm just saying that the notion that there can't be an injunction to prevent that strikes me as a little worrisome. I mean, so there's sort of a two-part response to that. The first has to go with sort of the facts on the ground. What happened here? What was the actual justification given? And the other is the type of injunction. I'd like to take it first. So why don't you point to me where it says 15? Okay, so I'd point the court first to ROA 15. And this is the, it says, failure to cooperate with outside law enforcement, I'm sorry, enforcement regarding Aryan Circle investigation. That's the gang he was trying to disaffiliate from. I will agree that if perhaps all it said was failure to cooperate with outside law enforcement, maybe there's a fact question about the reasoning behind it. But it clearly says Aryan Circle. That's the gang he was trying to be in. I think to be maybe on closer ground with some of the authority the other side has cited, the type of record you would expect to see is something like, hey, go tell me about unrelated crimes that have nothing to do with the gang, right? We heard many years ago you participated in some robbery when you were still in the free world. Or we want you to disaffiliate so that you can go to grad and tell us if other people are pretending to have disaffiliated but really aren't. There's nothing like that on the record. And I want to push back on any suggestion that the reason we don't have the actual allegations that could support maybe a closer factual inference is somehow that there was a deprivation of counsel or discovery. I don't think Mr. Ballantyne is shy at all, and prisoners in general are not shy about recounting what they allege has happened to them. There's an ample grievance process, grievances in the record. The thing I would point the court to as far as the indication that there's still some ongoing affiliation with the gang, for example, you could look at ROA 236 where he claims to be, quote, merely inactive. So the representation that he's somehow completely renounced gang membership and this is indisputed is just not true. It's something that's got to be tested out in a year-long investigation, but that did not yield a positive finding, as it were. The other thing I would point to, there's a grievance. So I guess your argument is that before he was allowed into grad, that the finding is that they didn't think he really had renounced it? Is that... Essentially, and I want to point out a couple things from that form. So one thing from the investigation, we could determine that it was still active in the gang. Another would be from the inference that because of failure to participate in investigation into the gang he was claiming to have renounced, I think a plausible inference that could be drawn is that that was insincere. And the reason we get back to the injunctive relief problem is in the same way you wouldn't order a trial judge to make particular credibility findings consistent with sovereign immunity next part to young. This would be directing a credibility determination that despite indications of the contrary, that Mr. Ballantyne be allowed into a population of ex-gang members and then potentially back into general population. It's a sort of supervisory superintending injunction. I think courts, even if they could enter, incredibly hesitant to do so. And it's really damaging for prison security. There's a general rule that this notion of solitary confinement, particularly after 14 years, and particularly when there's that you all haven't disputed that there's, you know, issues with not getting his food for a while and it's dirty and there's cockroaches and all of that kind of stuff, that he's entitled to procedural due process to try to remedy that. We've had cases on that. And I'm putting aside the grad notion. I'm just saying in general. Okay, so procedural due process. So what procedural due process has he gotten other than simply every three months the group goes, nah, not gonna let him out, done. That's not really all that processing. So if we're talking about what is the clearly established law on this, I think we can fairly say that the court could assume without deciding that there's a liberty interest like it did in STRS. And my friend on the other side wants to rely on the, you know, on the Wilkinson case, for example. Well, all that says is you have to give it an informal, non-adversarial process. So this idea that the prison officials are somehow required with granularity to specify and allow discovery and have this back and forth with the prisoner that they're investigating about a claim of gang renunciation really has no place in the actual due process standard as it currently exists. You have a review process. Here it happens to take a one year for the investigation and then a year of the program. If Mr. Ballentine's complaint was with the process itself, well, he hasn't sued any of the policymakers in the prison system. These are the people who would make at best a discretionary call about whether his particular renunciation was sincere. I think that gets back to the injunctive relief problem as well as the clearly established law problem. I think you'd have to sue at a minimum the people with a sufficient connection to the alleged problem under Ex parte Young. He hasn't done that. And probably why he would need a lawyer? Well, I don't think he would need a lawyer to say I have a problem with the process. All he would need to do, I think, to make an allegation like that would say it takes me too long. I should not have to take a year to prove that I've disaffiliated from the gang, for example. But he hasn't alleged anything like that. As best I can tell, he's disclaimed a challenge to the working of the program in that sense. He simply wants a positive determination that he may go to Grad. But that requires, and to go back to Judge Engelhardt's earlier question, whether this is under any sort of right to participate in Grad. I mean, it's not. It's a policy, not an entitlement. It's fused with discretion throughout. There's security threat groups on the inside I'm holding in my hand. This is referenced at page 11 and throughout the appellant's brief. And it talks about what must an offender do to get out of the gangs. One of the things it requires is completion of the investigation. And all that happens after is a recommendation is submitted to the Huntsville office, to his main office, essentially. There's no point where a prisoner can simply sign a form and say, I've renounced. I've renounced my gang membership. And if there's questioning that I don't want to answer about their renunciation, I say so, and I must be allowed to Grad. It amounts to something like a no-questions-asked policy. There's no constitutional basis for that. The last point that I would emphasize on the problem with injunctive relief is that the instance here seems to be a request for correction of a past determination as a textbook example of when a litigant is not seeking the proper ongoing constitutional violation. And I think that itself would be a separate problem under Ex Parte Young. That's something he could benefit with a lawyer on, kind of how you legally analyze things. Hard enough as a lawyer to figure out. Pretty hard for a pro se on that. And we gave him a lawyer on the last appeal. He has one on this appeal. Why shouldn't he have one now that we've said this is complex and so forth? And I mean, we have plenty of pro se litigants that don't get lawyers, and I respect that and understand that. But I'm saying why not this one? So fair enough. I'd like to take the two halves of that question in turn. Fair enough. He had the opportunity to proceed in district court, and the claim was found not frivolous. I'm not here to dispute that today, but he's had that opportunity. And I think with the briefing from counsel in this court, if there were clearly established law to be found, or some authority under Ex Parte Young supporting it, I have to assume that it would have been found. You say the district court should have done X, should have done Y, should have brought in these people, should have made this argument. That strikes me as the kind of thing an attorney in the district court has to do. When you're on the appeal, obviously, you're stuck with what happened in the district court, with rare exceptions. So just to give an example, right, in his more definite statement, I think we heard this morning an affirmative statement. The appellant wants this court to rely on his more definite statement. One of the things it says is that he's attempted to go to grad four times before. I believe this is around ROA 49 through 65. That's his more definite statement. But he says he's been asked to go four times before, right? So I think at a minimum, if we were going to require counsel and go through that burden on the state, which I think is inconsistent with the current precedent for procedural due process, putting that aside, if the allegation were that each of those four times, every time I'm being asked to cooperate with outside law enforcement, I keep telling me the same thing, I don't know, maybe that's a closer factual question. We don't have that. What we have is what appears to be one group of unknown, unidentified outside law enforcement who aren't parties to this case, and he won't tell us what they asked them or what was problematic about it. Four years ago, where no indictment seems to have come from it, there's inevitably limitations, I think we'd expect to see more in the record for him to be actually able to say that this sort of supposed ongoing violation is in fact happening in the real world. At least something to back it up in his more definite statement. The link there is just non-existent on this record. And so more counsel and more discovery is not going to actually change the allegations of what happened to him. It was incumbent, especially since my friend on the other side has asked this court to consider the veracity of the things he says in his more definite statement. I think we have to take it at his word that that's not something that actually happened to him or he would have told us. Unless there are any further questions, I'm happy to yield my time. Okay, thank you. Thank you. We'll hear the rebuttal and I'd like to hear how you rebut what was just said. Certainly. I think it's telling that the state is relying on incompleteness in Mr. Ballantyne's own evidentiary submissions, that the handwritten things he has put in his step one grievance offender form at ROA 236, which my friend referenced. Yes, he said, first, I've been inactive for years. I think it's a bit of a stretch to draw from that by inactive. What he really meant is I've been temporarily on leave, but if you let me out of administrative segregation, I'm going to rejoin the gang immediately, which is what my friend seems to suggest that means. I think this is a prisoner who's frustrated by the 14 years he's been in solitary confinement. And that, by the way, is the nature of the ongoing violation here that Mr. Ballantyne spends every day in solitary confinement. It is the prison's requirement under Wilkerson and under Wilkinson to provide meaningful review. Now, I agree with the state. This does not mean that he needs to have a full adversarial hearing with counsel. None of that is required. Hewitt sets a very low bar for what these reviews have to be in order to be adequate. But it must be meaningful. That's what the Tenth Circuit found in Toves, what the Second Circuit found in Proctor, what the Third Circuit found in Porter, that it's not enough. And what this court suggested in Wilkerson and what the district court concluded in Wilkerson, that the hearings that were going on there were inadequate because they reached the same outcome every time. This is worse than that. It's not just that the prison officials are saying the same thing every time. It's that they're saying you must remain in solitary unless you surrender your Fifth Amendment right to remain silent. Even today, the state has not disputed that. The state has not said that if he were to reapply to grad, and again, this is not in the record, but he has since attempted to reapply to grad, the state has not said that they would allow him in without requiring him to cooperate with outside law enforcement. So the record, everything in the record suggests this is an ongoing requirement and an ongoing violation. Counsel, let me ask you, one of the arguments regarding the appointment of counsel is to assist in discovery. What specific discovery do you think the plaintiff should have been able to conduct? You mentioned the names of the people, for instance, of the law enforcement personnel that were trying to interview him. What other specific items of discovery do you think are critical that he didn't get because he didn't have counsel? Well, to be clear, I think the record as it exists is sufficient for Mr. Ballentine to prevail on his 14th and Fifth Amendment claims because the state has not disputed that failure to provide information was the sole basis for his rejection. That notwithstanding, having counsel would have allowed him, I think, most directly to better argue for access to the STG file. To the extent the state is suggesting without any particular evidentiary support today that he remains active, he would have been able to combat that evidence in district court if he had that counsel representing him in preparing that. I think a lot of the state's hesitation about producing the document, for example, would have been vitiated had he had... If he was a criminal as opposed to counsel. Right. Certainly. Certainly, Your Honor. I would also point out, as far as the clearly established argument the state is going, that goes only to damages. It's irrelevant to the request for injunctive relief. And this court found in Wilkerson 10 years ago that the liberty interest in getting out of solitary confinement and the requirement of meaningful review was clearly established. And other circuits have similarly held that the kind of review, even more meaningful review than Ballantyne is receiving, is inadequate. And it is clearly established that it's inadequate. That's the Fourth Circuit in Thorpe. McCune itself establishes the Fifth Amendment claim that you cannot impose a restriction of a liberty interest as a penalty on someone for their refusal to self-incriminate, which is what they've done here. And finally, I would point out that the penalty here is not coming from the law enforcement officers who are not defendants. Mr Ballantyne doesn't dispute that law enforcement can ask him questions. They absolutely can do that. But he has a right not to answer. And if he exercises that right, he has a right not to suffer unduly burdensome penalties as a result. And it is the defendants, Sergeant Broxton and her supervisor, Officer Hart, who are the people who control access to Grad and who rejected him from Grad because of his refusal to answer those questions. So because the defendants are responsible for the penalty, they are responsible for the constitutional violation here. An extremely targeted injunction of the type Your Honor described, saying that Mr Ballantyne cannot be prohibited from joining Grad conditioned on providing information to a law enforcement investigation that's potentially incriminating, would be sufficient here to redress that constitutional injury. Okay. Thank you, Your Honor. Thank you both sides. We appreciate it. The case is under submission and we're going to take a brief recess.